## IN THE COURT OF APPEALS OF IOWA

No. 22-1343
Filed December 7, 2022

**IN THE INTEREST OF K.B.,**
**Minor Child,**

**T.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Madison County, Kevin Parker, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Erica D. Parkey, Des Moines, attorney and guardian ad litem, for minor child.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

The State petitioned for termination of a father's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2021). Following a hearing, the juvenile court terminated the father's rights, relying on section 232.116(1)(e), (*l*), and (n). It appears the court's reference to paragraph (n) amounted to a scrivener's error and the court intended to identify paragraph (h) as the third ground for termination. On appeal, the father challenges the statutory grounds listed in the termination order, argues termination is not in the child's best interests, suggests a permissive exception to termination should apply to preclude termination, and requests additional time to work toward reunification.[1]

We conduct de novo review of decisions terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process of determining (1) if statutory grounds for termination have been established, (2) if termination is in the children's best interests, and (3) whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Then we address any additional claims raised by a parent. *In re S.D.*, No. 22-1141, 2022 WL 3906757, at *1 (Iowa Ct. App. Aug. 31, 2022).

---

[1] Throughout his petition on appeal, the father repeatedly alternates between referring to himself as the mother and the father. We assume these are simply proofreading or typographical errors and treat all arguments as being made on the father's behalf. To the extent these references were intended to raise arguments on the mother's behalf, we reject them, as the father has no standing to raise issues on the mother's behalf. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 n.4 (Iowa Ct. App. Jan. 9, 2020).

When a parent's rights are terminated under multiple statutory grounds we may affirm on any ground established by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to proceed under paragraph (*l*), which permits termination of parental rights upon proof of these elements:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
>
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
>
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Iowa Code § 232.116(1)(*l*).

The father concedes the first element but contests elements two and three. Like many parents we see in termination cases, the father struggles with methamphetamine addiction. He has been diagnosed using the DSM-V with F15.20 amphetamine-type substance use disorder, severe, which amounts to "a severe substance-related disorder." *See In re L.H.*, 949 N.W.2d 268, 271 (Iowa Ct. App. 2020). Yet he claims that there is not sufficient evidence that his substance-related disorder "presents a danger to [him]self or others as evidenced by prior acts." *See* Iowa Code § 232.116(1)(*l*)(2). We disagree. This family came to the attention of the Iowa Department of Health and Human Services after the father physically assaulted the mother in front of the child and while both parents were high on methamphetamine.[2] Based on this evidence, we conclude the second element is satisfied.

---

[2] The father also has a history of substance-related criminal activity.

As to the third element, we conclude the child will not be able to be returned to the father within a reasonable period of time. *See id.* § 232.116(1)(*l*)(3). The father has not been able to establish any meaningful period of sobriety. We acknowledge that he successfully completed substance-abuse treatment. However, he tested positive for methamphetamine upon his discharge and tampered with a sweat patch to prevent drug testing. Given his long struggle with methamphetamine addiction and his relapse soon after completion of treatment, we anticipate the father will continue to struggle to control his methamphetamine addiction for the foreseeable future, preventing reunification. Accordingly, the third element of this ground for termination is satisfied. As the State established all elements for termination under section 232.116(1)(*l*), the father's challenge to the statutory grounds for termination fails.

Next, the father conflates our best-interests analysis[3] with whether we should apply an exception to termination, so we address these issues in tandem. The father insinuates that termination is not in the child's best interests because "a very strong bond exists between the child and [f]ather such that it would be detrimental to the child to terminate the parent-child relationship[]," implicating section 232.116(3)(c).[4] However, the burden of establishing a permissive exception to termination rests with the parent. *In re A.S.*, 906 N.W.2d 467, 475–

---

[3] When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

[4] Section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

76 (Iowa 2018). The father failed to raise his purported bond with the child as possible grounds to forgo termination, so his claim is not preserved for our consideration. *See In re E.W.*, No. 22-0647, 2022 WL 2347196, at *3 (Iowa Ct. App. June 29, 2022). Nonetheless, we note the record does not reveal a particularly strong bond between father and child. For example, upon arrival to visits with the father, the child would get out of her car seat and move to the opposite side of the car in an apparent effort to avoid going into the visit. Given the limited parent-child bond and the father's ongoing struggles with methamphetamine, we conclude termination is in the child's best interests.

Finally, we address the father's request for additional time to work toward reunification. If the juvenile court decides not to terminate parental rights, it has the option of ordering any alternative statutory permanency option, which includes giving the parent an additional six months to work toward reunification. Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving the parents an additional six months). However, before the court may grant the parent additional time to work toward reunification, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). The record does not support a finding that any "specific factors, conditions, or expected behavioral changes" could be expected in this case. *See id.* We also note that the father already received a six-month extension as he coat-tailed an

extension previously granted based on the mother's progress.[5]   Based on our review, we conclude the juvenile court was correct to not grant the father additional time to work toward reunification and instead terminate his parental rights.

**AFFIRMED.**

---

[5] The mother sustained her progress to the extent the child was returned to her custody, and the State did not seek termination of her rights.